UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:22-cv-272-JES-MRM

Irma Y. Ortega,

      Plaintiff,

v.

Nutraluxe Global LLC,

      Defendant,

_____/

### JOINT MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT AND DISMISSING CASE WITH PREJUDICE

Plaintiff, IRMA Y. ORTEGA, (hereinafter, "Plaintiff"), and Defendant, NUTRALUXE GLOBAL LLC (hereinafter, "Defendant"), by and through their respective undersigned counsel, hereby file this Joint Motion for Entry of Order Approving Settlement and jointly request that this Honorable Court approve the negotiated compromise settlement reached in the above-captioned matter and dismiss this case with prejudice, and in support thereof, state:

### MEMORANDUM OF LAW

### I.   Legal Principles

This is an action brought by Plaintiff for alleged unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 210 *et. seq*. Defendant denies any and all liability with regard to Plaintiff's claims, including the amount of any alleged unpaid back wages, including overtime wages, in this action, and asserts

that Plaintiff was at all times properly compensated under the FLSA. The Parties have agreed to settle Plaintiff's claims through a negotiated Settlement Agreement and General Release of Claims (the "Settlement Agreement"), which reflects a compromise of Plaintiff's claims as alleged in the Complaint.

Pursuant to the case law regarding settlement of FLSA claims, there are two ways in which contested claims under the FLSA can be settled and released by employees. First, section 216(c) of the FLSA allows employees to settle and release their claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Second, in the context of a private lawsuit brought by an employee against an employer under section 216(b) of the FLSA, an employee may settle and release FLSA claims against an employer if the parties present the district court with a proposed settlement and the district court enters an Order approving the settlement. *Id.* In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit stated as follows:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the

district court to approve the settlement in order to promote the policy
of encouraging settlement of litigation.

*Lynn's Food Stores,* 679 F.2d at 1354.

The settlement of the instant action involves a situation in which the Court
may approve the Parties' settlement to resolve and release Plaintiff's claims against
Defendant. The proposed settlement arises out of an adversarial action for back
wages brought by Plaintiff against her former employer.

The Parties agree that the instant action involves disputed issues. Although
Defendant disputes its liability for the allegedly owed back pay, including overtime
wage payments, to Plaintiff, it has ultimately agreed to pay Plaintiff in full settlement
of the disputed claims.

With regard to legal fees, a court reviewing an FLSA settlement must review
"the reasonableness of counsel's legal fees to assure both that counsel is
compensated adequately and that no conflict of interest taints the amount the
wronged employee recovers under a settlement agreement." *Silva v. Miller*, 2009
WL 73164, *2 (11th Cir. Jan. 13, 2009). In the wake of *Silva*, persuasive district
court authority has deemed scrutiny of the reasonableness of plaintiff's agreed-
upon attorneys' fees to be unnecessary in an FLSA settlement where "the plaintiff's
attorneys' fees were agreed upon separately and without regard to the amount paid
to the plaintiff," except in circumstances where "the settlement does not appear
reasonable on its face or there is reason to believe that the plaintiff's recovery was
adversely affected by the amount of fees paid to his attorney." *Bonetti v. Embarq*

*Mgmt. Co.*, 715 F. Supp.2d 1228, 1228 (M.D. Fla. 2009); see also *Wing v. Plann B Corp.*, 2012 WL 4746258, \*4 (M.D. Fla. Sept. 17, 2012) (declining to examine reasonableness of attorneys' fee payment in FLSA settlement where the FLSA claims were compromised, there was a reasonable basis for such compromise, and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there [was] no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel").

As explained in *Bonetti,* "the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." 715 F. Supp. 2d at 1228. In *Bonetti*, Judge Presnell concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*Id.*

## II.   **Terms of Settlement**

1.   This case involves claims made by Plaintiff for alleged unpaid back wages, including alleged unpaid overtime wages, under the FLSA.

2.   Each party was independently represented by counsel. Plaintiff was represented by Zandro E. Palma, Esq., of The Law Offices of Zandro E. Palma, P.A., and Defendant was represented by Cathy J. Beveridge, Esq. and Mia C. Larson, Esq. of Buchanan Ingersoll & Rooney, P.C.. Counsel involved have significant experience in litigating claims under the Fair Labor Standards Act, including claims for unpaid minimum wage and overtime compensation. Each counsel was obligated to and did vigorously represent their client's rights. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, *11-12 (M.D. Fla. Dec. 21, 2006).

3.   After appropriate negotiations, the parties were able to reach a settlement between them that resolved all of Plaintiff's claims, including those for attorneys' fees and costs, which were negotiated separately and apart from Plaintiff's alleged FLSA damages.

4.   Plaintiff and Defendant herein state that the settlement reached between them with respect to Plaintiff's alleged FLSA damages represents a fair and reasonable resolution for Plaintiff of disputed claims and that the terms of the Settlement Agreement are acceptable to both Plaintiff and Defendant. Specifically, based upon their respective estimates of Plaintiff's underlying claims and her claims for attorneys' fees and costs, the parties negotiated the

settlement amount herein.

5.   In settlement, Plaintiff IRMA Y. ORTEGA, will be paid a total of $8,000.00 as full relief and compensation for any alleged unpaid back wages, liquidated damages, and any other claims she may have against Defendant. From the total amount of $8,000.00, $3,750.00 shall be allocated in full satisfaction of Plaintiff's claim for "alleged unpaid wages"; $3,750.00 shall be allocated in full satisfaction of Plaintiff's claim for "alleged liquidated damages"; and $500.00 shall be allocated as separate consideration for a general release of claims. The parties agree that upon careful review of Plaintiff's dates of alleged employment; hours and weeks which Plaintiff worked; time and pay records; and all available evidence pertaining to Plaintiff's employment, this amount represents a fair and reasonable compromise for Plaintiff of the disputed claims.

6.   Notwithstanding, the parties agree that there are genuine disputes as to whether or not Plaintiff worked the alleged number of hours on a weekly basis; whether or not Plaintiff was in fact paid properly for all hours Plaintiff allegedly worked, including overtime; and whether or not any alleged violations of the FLSA, if any, were willful. Consequently, Plaintiff could have been barred from any recovery in this matter whatsoever with regards to her claims under the FLSA had Defendant prevailed on its defenses, and/or had Plaintiff not been able to establish her claims at trial.

7.   Accordingly, the amount of this settlement is fair and reasonable to Plaintiff

given that: Plaintiff will be receiving substantial compensation, inclusive of liquidated damages, for her alleged claims under the FLSA; Plaintiff's claims are highly disputed; the issues of material fact are in dispute; and Plaintiff could be barred from any recovery in this matter should Defendant prevail on its defenses and/or should Plaintiff not be able to establish her claims. Additionally, this settlement amount is reasonable to Plaintiff given the high costs of defending and litigating this matter further, and the time and resources which would have been expended by both parties in taking this matter to trial. This settlement amount was arrived at after appropriate negotiation by the parties, and Defendant does not admit any liability in this action.

8.    Counsel for the Parties note that in conjunction with the settlement of Plaintiff's alleged FLSA claims, the parties' Settlement Agreement also contains a general release of claims in exchange for separate monetary consideration to be paid by Defendant. While courts typically disfavor general release clauses in FLSA settlement agreements, numerous courts have approved non-cash concessions such as confidentiality provisions and general release clauses in FLSA settlement agreements if they have been negotiated in exchange for separate consideration. *See, e.g.*, *Rivera v. CO2Meter*, No. 6:17-cv156-Orl28-GJK, 2018 WL 3213329, at *3-5 (M.D. Fla. June 14, 2018); *Scherr v. Cooper Restaurants, Inc.*, No. CV 17-00338-CG-N, 2018 WL 2978046, at *2-3 (S.D. Ala. May 7, 2018) (unpublished)

(approving settlement agreement with confidentiality provision and general release because plaintiff received additional consideration); *Weldon v. Blackwoods Steakhouse, Inc.*, No.6:14-cv-79-Orl-37TBS, 2014 WL 4385593, at *1 (M.D. Fla. Sept. 4, 2014) (unpublished) (approving settlement agreement under which plaintiff received full compensation and $100.00 in additional consideration for general release and non-disparagement provisions); *Smith v. Aramark Corp.*, No. 6:14-cv-409-Orl-22KRS, 2014 WL 5690488, at *4 (M.D. Fla. Nov. 4, 2014) (unpublished) (approving settlement agreement under which plaintiff received full compensation and additional consideration for general release, confidentiality, and non-disparagement terms in settlement agreement); *Caamal v. Shelter Mortg. Co., LLC.*,6:13-cv-706-Orl-36KRS, 2013 WL 5421955, at *2, 4 (M.D. Fla. Sept. 26, 2013) (unpublished) (approving settlement agreement under which plaintiff received full compensation and an additional $500.00 for release, non-disparagement agreement, and waiver of future employment).

9.     Under the terms of the Settlement Agreement, Plaintiff is receiving her alleged back wages owed, and is receiving separate, additional compensation for her general release of claims against Defendant.

10.    The last element the Court should evaluate in determining the fairness of the settlement is the reasonableness of the proposed attorneys' fees. See *Helms, 2006 U.S. Dist. LEXIS at *6-7.* Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the

plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to her attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti v. Embarq Management Company*, 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009).

11.   The Parties stipulate and agree that the attorneys' fees and costs paid as part of this settlement are fair and reasonable to Plaintiff, and were separately agreed upon without regard to the amounts paid to Plaintiff. *Bonetti*, 715 F.Supp.2d at 1228.

12.   Here, separately and apart from the compensation Plaintiff shall receive for her alleged FLSA claims, Plaintiff's counsel shall receive $4,000.00 in attorneys' fees and $500.00 in costs, which have been incurred to date in this action, including preparation and/or review of all settlement documents. Plaintiff's counsel, who has 16 years of experience litigating employment related matters, charges an hourly rate of $400.00. This rate has been consistently approved by courts in this District as well as courts in the Southern and Northern Districts of Florida. Moreover, Plaintiffs' counsel's previous hourly rate of $375.00 had also been consistently approved and deemed reasonable by this Court as well as courts in the Southern and Northern Districts of Florida. *See Abreu v. Free Flow Constr., Inc.*, Case No. 18-20244, 2018 WL 6492904, at *1 (S.D. Fla. Oct. 30, 2018)

9

(adopting Report and Recommendation recommending that Zandro E. Palma, Esq.'s requested rate of $375.00 was reasonable); *see also Ruiz, et. Al. v. Global Fish Handlers, Corp., et al.*, Case No. 1:16-cv-25205-JEM, [D.E.#65], (S.D. Fla. April 4, 2019) ("This Court has previously awarded Mr. Palma attorneys' fees at a rate of $375 per hour. The Court finds that $375 is a reasonable hourly rate for Mr. Palma.")

13. Plaintiff's counsel hereby certifies that he has expended over 10 hours on this matter to date, which includes time spent negotiating settlement, conducting informal discovery, document review, attorney-client communications, and other off-the-record activity. Notwithstanding, Plaintiff's counsel's attorneys' fees and costs were negotiated separately and apart, and the amount of fees and costs negotiated did not compromise in any way the amount allocated to Plaintiff. Consequently, Plaintiff's recovery was not adversely affected by the amount of fees and costs to be paid to her attorney.

14. As set forth by the cited authority above, because attorneys' fees and costs were determined separately and apart from Plaintiff's recovery, this Honorable Court should find that the settlement and attorneys' fees were agreed upon without compromising the amount paid to Plaintiff, and approve the settlement without separately considering the reasonableness of the fee to be paid to Plaintiff's counsel.

15. The parties' Settlement Agreement is attached hereto as **Exhibit A**.

16. The attached Settlement Agreement includes every term and condition of the parties' settlement.

17. Having agreed to the terms of the settlement reached, Plaintiff and Defendant respectfully requests that this Honorable Court approve the settlement between the parties.

18. Accordingly, the parties respectfully request that this Court approve the Settlement attributed to Plaintiff's alleged FLSA claims, dismiss this action with prejudice, and otherwise deny any pending motions as moot.

WHEREFORE, the Parties respectfully request that this Honorable Court approve the parties' settlement, dismiss this action with prejudice, and deny any pending motions as moot.

DATED this 10th day of June 2022.

Respectfully submitted,

*/s/Zandro E. Palma*
Zandro E. Palma, Esq.
Florida Bar No.: 0024031
**ZANDRO E. PALMA, P.A.**
9100 S. Dadeland Blvd., Suite 1500
Miami, Florida 33156
Telephone: (305) 446-1500
Fax: (305) 446-1502
zep@ThePalmaLawGroup.com

*Attorney for Plaintiff*

*/s/ Cathy J. Beveridge*
Cathy J. Beveridge, Esq.
Florida Bar No.: 831018
Mia C. Larson, Esq.
Florida Bar No. 1031991
**BUCHANAN INGERSOLL & ROONEY PC**
401 E. Jackson Street
Suite 2400
Tampa, FL 33602
Tel.: (813) 222-8180
Fax: (813) 222-8189
Cathy.Beveridge@bipc.com
Mia.Larson@bipc.com
*Attorneys for Defendant*

4882-6381-4692, v. 1

# EXHIBIT "A"

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

## CASE NO.: 2:22-cv-00272-JES-MRM

Irma Y. Ortega,

   Plaintiff,

v.

Nutraluxe Global LLC,

   Defendant.

_____/

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

     This Settlement Agreement and General Release of Claims (this "Agreement") is made and entered into by and between NUTRALUXE GLOBAL, LLC (the "Company") and IRMA Y. ORTEGA ("Plaintiff") (collectively, the "Parties") on this 10th day of June, 2022 (the "Effective Date").

## RECITALS

     **WHEREAS**, Plaintiff is a former employee of the Company;

     **WHEREAS**, on or around April 27, 2022, Plaintiff filed a lawsuit against the Company styled *Irma Y. Ortega v. Nutraluxe Global LLC*, Case No. 2:22-cv-00272 (the "Lawsuit"), seeking back pay, including overtime compensation and other damages, under the Fair Labor Standards Act ("FLSA") arising from Plaintiff's employment with the Company;

     **WHEREAS**, the Company denies all claims asserted by Plaintiff in the Lawsuit; and

     **WHEREAS**, the Parties understand and agree that all the claims and causes of action asserted in the Lawsuit are disputed, that the Parties desire to settle fully and finally all such disputes to avoid further litigation, and that the Parties have agreed to enter into this Agreement solely to avoid the expense, time, trouble, and uncertainty of further investigation and litigation.

1

Plaintiff's Initials I . O

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

**NOW THEREFORE**, for and in consideration of the mutual promises and agreements recited below, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, the Parties to this Agreement agree as follows:

**(1)    REAFFIRMATION OF RECITALS.** The foregoing recitals are complete, true, and correct, and are incorporated herein and made part hereof by this reference.

**(2)    CONDITION PRECEDENT.** This Agreement and the settlement described herein are subject to the condition precedent that this Agreement must be approved in its current form by a written order entered by the Court in the Lawsuit ("Approval Order"). In the absence of such an Approval Order, every part of this Agreement is null, void ab initio, unenforceable, of no force or effect, and shall have no evidentiary or other legal value. The Parties agree not to take any action to prevent or impede the entry of an Approval Order by the Court approving this Agreement, in its current form, from becoming final.

**(3)    SOLE AND EXCLUSIVE PAYMENT.** On or before June 8, 2022, the Company will deliver to Plaintiff's counsel four checks totaling the gross sum (before taxes, deductions, and withholdings) of Twelve Thousand, Five Hundred Dollars and no cents ($12,500.00) and nothing else (the "Settlement Payment"). Plaintiff's counsel will hold these checks and not disperse any of them until all the conditions precedent in this Agreement, including the entry of the Approval Order, are performed or occur.  After (i) Plaintiff executes, and does not revoke, this Agreement; (ii) the Court enters an Approval Order; and (iii) the Lawsuit is dismissed with prejudice, the Settlement Payment will be dispersed and paid as follows:

(a)            A check payable to Irma Ortega for the gross amount of Three Thousand, Seven Hundred and Fifty Dollars and no cents ($3,750.00), less normal and appropriate payroll taxes, withholdings, and deductions, as alleged overtime compensation under the FLSA, for which the Company will issue a Form W-2 to Irma Ortega at the appropriate time;

(b)            A check payable to Irma Ortega for the gross amount of Three Thousand, Seven Hundred and Fifty Dollars and no cents ($3,750.00), as alleged liquidated damages under the FLSA, for which the Company will issue a Form 1099 to Irma Ortega at the appropriate time;

Plaintiff's Initials

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

(c)          A check payable to Irma Ortega for the gross amount of Five Hundred Dollars and no cents ($500.00), as consideration for the general release of claims and other terms contained in this Agreement, for which the Company will issue a Form 1099 to Irma Ortega at the appropriate time; and

(d)          A check payable to Plaintiff's counsel, the Law Offices of Zandro E. Palma, P.A., for the gross amount of Four Thousand, Five Hundred Dollars and no cents ($4,500.00), as attorney's fees and costs related to the Lawsuit and the negotiation of this Agreement, for which the Company will issue a Form 1099 to the Law Offices of Zandro E. Palma, P.A. at the appropriate time.

(e)          The Parties acknowledge and agree that the payment specified in Section (3)(d) of this Agreement was negotiated separately and apart from Plaintiff's FLSA claim asserted in the Lawsuit, and that Plaintiff's recovery will not be reduced by any part of the attorney's fees or costs in this case. Plaintiff is specifically aware of, and agrees with, the amount of fees to be paid to her counsel for representing her interests in this matter, and agrees that these fees are reasonable.

(f)          Plaintiff acknowledges and agrees that the payment specified in Section 3(c) of this Agreement is money to which Plaintiff would not otherwise be entitled as a result of her employment with the Company, and that the Settlement Payment constitutes fair and adequate compensation for the promises and covenants of the Plaintiff set forth in this Agreement. Plaintiff further acknowledges and agrees that: (i) $500.00 constitutes fair, reasonable, and adequate consideration supporting Plaintiff's general release of known and unknown claims against Defendant; (ii) this amount of additional consideration was specifically bargained for and negotiated between the Parties; and (iii) the negotiations for this amount of additional consideration were conducted separately and apart from the negotiations for the settlement of Plaintiff's FLSA claim asserted in the Lawsuit.

(g)          Plaintiff and her counsel acknowledge and agree that neither the Company nor the Releasees, as defined below, have made any representation to Plaintiff regarding the tax consequences of the Settlement Payment. Plaintiff agrees that should the payments under Section (3)(a)-(c) of this Agreement be found to be subject to any additional federal, state, or local taxes, Plaintiff bears the sole and exclusive responsibility for paying such taxes, as well as any interest and penalties imposed by any governmental

3

Plaintiff's Initials ⊥ . O

entity thereon, and Plaintiff agrees to indemnify the Company to the extent that any governmental entity seeks to recover unpaid taxes, penalties, or interest from the Company on these payments.

## (4)  PLAINTIFF'S GENERAL RELEASE OF CLAIMS.

(a)    In exchange for the additional consideration paid to Plaintiff by the Company pursuant to Section (3)(c) of this Agreement, Plaintiff, on behalf of herself and her heirs, spouse, family members, successors, personal representatives, and assigns, hereby irrevocably and unconditionally waives, releases, holds harmless, and forever discharges the Company and its parents, direct and indirect subsidiaries, divisions, related entities, affiliates, holding companies, companies under common control of any of the foregoing, and its and their current, future, and former owners, shareholders, partners, principals, managers, members, directors, officers, agents, contractors, employees, fiduciaries, attorneys, insurers, employee benefit plans or programs (and the trustees, administrators, fiduciaries, and insurers of such plans or programs), whether direct or indirect, and each of its and their respective heirs, executors, administrators, successors, and assigns (collectively referred to as the "Releasees"), in their individual and business capacities, from all claims, proceedings, complaints, grievances, liens, losses, agreements, contracts, covenants, obligations, debts, controversies, torts, demands, actions, causes of action, suits, costs, judgments, liabilities, expenses, and damages of any kind whatsoever (including attorney's fees), whether known or unknown, in law or in equity, that Plaintiff has or at any time had against any of the Releasees through the date of signing this Agreement including, but not limited to, all:

(i)    Claims that were asserted or could have been asserted in the Lawsuit, including any claim under the Fair Labor Standards Act ("FLSA");

(ii)    Claims that arise out of, result from, or are in any manner related to Plaintiff's employment with the Company or separation therefrom;

(iii)    Claims that arise out of, result from, or are in any manner related to the negotiation and execution of this Agreement and the Settlement Payment contained herein;

(iv)    Claims under any law, ordinance, executive order, code, rule, regulation, or statute including, but not limited to, any fair employment practices statute; any employment benefits statute; the Employee Retirement

4

Plaintiff's Initials ___

Income Security Act of 1974 ("ERISA"); Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act of 1967 ("ADEA"); the Older Workers Benefit Protection Act of 1990 ("OWBPA"); the Americans with Disabilities Act ("ADA"); the Family and Medical Leave Act ("FMLA"); the False Claims Act (including the qui tam provisions thereof); the Worker Adjustment and Retraining Notification Act ("WARN"); the Equal Pay Act of 1963; the Lilly Ledbetter Fair Pay Act; the Civil Rights Acts of 1866, 1871 and 1991; the National Labor Relations Act (as amended, including any unfair labor practice charges) ("NLRA"); the Genetic Information Nondiscrimination Act of 2008 ("GINA"); the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"); the Financial Reform and Enforcement Act of 1989; the Immigration Reform and Control Act; the Rehabilitation Act of 1973; the Occupational Safety and Health Act of 1970 ("OSHA"); the Health Maintenance Organization Act of 1973; Executive Orders 11141, 11246, and 11375; the Families First Coronavirus Response Act; the Fair Credit Reporting Act; the Sarbanes Oxley Act; the Uniformed Services Employment and Reemployment Rights Act; the Florida Constitution; the Florida Civil Rights Act of 1992 (Fla. Stat. §§ 760.01 to 760.11); the Florida Omnibus AIDS Act of 1988 (Fla. Stat. § 381.004); the Florida Workers' Compensation Retaliation provision (Fla. Stat. § 440.205); the Florida Attorney's Fees Provision in Actions for Unpaid Wages (Fla. Stat. §§ 448.08); the Florida Whistleblower Protection Act (Fla. Stat. §§ 448.101 to 448.105); the Florida Minimum Wage Act (Fla. Stat. § 448.110); any minimum wage and retaliation violations under the Florida Constitution (Fla. Const. art. X, § 24); the Florida Fair Housing Act (Fla. Stat. §§ 760.20 to 760.37); any Florida state employment laws; and all applicable amendments to the foregoing acts and laws; as well as any claims for any type or kind of discrimination, reverse discrimination, harassment, retaliation, wrongful or retaliatory discharge, or constructive discharge, whether based on age, sex, gender, race, color, religion, national origin, pregnancy, marital status, disability, genetic information, sexual orientation, or any other basis;

(v)    Claims for wages, employee benefits, vacation pay or other paid time off, severance pay, bonus compensation, commissions, deferred compensation, or other remuneration arising out of Plaintiff's employment relationship with the Company;

(vi)    Claims for defamation, invasion of privacy, assault, battery, fraud, intentional or negligent infliction of emotional distress, negligence, gross negligence, estoppel, intentional or negligent misrepresentation, express or

Plaintiff's Initials ___

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

implied duties of good faith and fair dealing, fraud, refusal to perform an illegal act, wrongful discharge, false imprisonment, malicious prosecution, abuse of process, libel, slander, invasion of privacy, retaliation, personal injury, fraudulent inducement or concealment, promissory estoppel, whistleblower claims, and tort claims for any and all alleged acts, omissions, or events through the Effective Date of this Agreement;

(vii) Claims for breach of implied or express contract, interference with contractual or business relationships; violations of personnel policies or procedures; and

(viii) Claims for penalties, punitive damages, attorney's fees or costs, or any other type of damages by Plaintiff or her counsel.

(b)        Plaintiff specifically waives the benefit of any statute or rule of law that, if applied to this Agreement, would otherwise exclude from its binding effect any claims not now known by Plaintiff to exist.

(c)        Notwithstanding anything in this Agreement to the contrary, the release of claims set forth in Section 4(a) does not and is not intended to release any claims that cannot be released by law. Plaintiff understands that, unless otherwise allowed by applicable law, the general release of claims does not apply to any future rights or claims, and neither the general release of claims nor the covenant not to sue contained in this Agreement prevents Plaintiff from filing a lawsuit to obtain a judicial determination of the legal validity of the release of any claims that she believes she has under the Age Discrimination in Employment Act.

(d)        Notwithstanding anything in this Agreement to the contrary, the release of claims set forth in Section 4(a) does not and is not intended to prevent, restrict, or otherwise interfere with Plaintiff's right to (i) file a charge or complaint with any appropriate federal, state, or local agency; (ii) testify, assist, participate in, or cooperate with the investigation of any charge or complaint pending before or being investigated by such agency; (iii) enforce this Agreement; (iv) seek a judicial determination of the validity of the release of Plaintiff's rights under the Age Discrimination in Employment Act or the Older Workers Benefit Protection Act; (v) file for unemployment compensation or workers' compensation; or (vi) report or receive any financial awards from the federal government for reporting possible violations of federal law or regulation to any governmental agency or entity, or for making other disclosures protected under the whistleblower provisions of federal law

6

Plaintiff's Initials ___

or regulations. Unless otherwise allowed by applicable law, the general release of claims set forth in Section 4(a) does not apply to any rights or claims that may arise after the Effective Date of this Agreement, including such claims under the Age Discrimination in Employment Act.

(e)　　　　　If an administrative agency or court assumes jurisdiction over any charge or complaint involving claims that are released by Section 4(a) of this Agreement, Plaintiff agrees to not, directly or indirectly, accept, recover, or receive any resulting monetary damages or other types of damages or relief, including equitable relief, that otherwise would be due, and Plaintiff expressly waives any rights to any such recovery or relief, except as permitted by Sections 4(c) and 4(d), above. Should any third party (including a private attorney, the Equal Employment Opportunity Commission, the U.S. Department of Labor or any other federal or state agency) bring any action or claim against any of the Releasees on behalf of Plaintiff, either collectively or individually, Plaintiff agrees that this Agreement provides her with full compensation and relief and she will not accept any other relief. In addition, Plaintiff agrees that if class or collective claims are asserted against any of the Releasees, whether or not encompassed within this Agreement, she will not opt-in or will opt-out, as necessary, to exclude herself from the class or collective action on whose behalf the claims are asserted.

**(5)　COVENANT NOT TO SUE.** Except as expressly provided in this Agreement, Plaintiff covenants and agrees that she shall not report, institute, or file any lawsuit or action (or encourage, solicit, or voluntarily assist or participate in the reporting, instituting, filing, or prosecution of any lawsuit or action by a third party) against any of the Releasees with respect to any claim that has been released in this Agreement, either personally or as a representative of any other person, state, or governmental entity. Plaintiff acknowledges that this Agreement explicitly allows her to file a charge or complaint with any federal, state, or local agency, and to seek a judicial determination of the validity of the release of her rights and any claims for alleged age discrimination or of the knowing and voluntary nature of this Agreement under the Age Discrimination in Employment Act or under the Older Workers Benefit Protection Act.

**(6)　REPRESENTATIONS.** By signing this Agreement, Plaintiff represents and certifies that she: (i) has not suffered any on-the-job injury for which she has not already filed a claim; (ii) has no accrued but unpaid

7

Plaintiff's Initials

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

vacation or personal time due to her; (iii) has been paid in full for all hours worked for each week of her employment; (iv) has received any leaves of absence to which she was entitled, and the Company has not interfered with her ability to request or take such leaves of absence; and (v) is not aware of any violations of any statute, law, or regulation by the Company, any Releasee, or any of its or their employees or agents or, if she is aware of any such violations, she has already reported them in writing to the Company.

**(7)    DISMISSAL OF LITIGATION.** After Plaintiff's counsel receives the Settlement Payment (to hold until entry of the Approval Order and dismissal of the Lawsuit with prejudice) and fully executed Agreement from the Company's counsel, Plaintiff and her counsel shall simultaneously execute and deliver to counsel for the Company a Joint Motion for Entry of Order Approving Settlement and Dismissing Case with Prejudice and allow the same to be entered in the above-captioned Lawsuit, calling for the dismissal of all claims in the Lawsuit with prejudice. Plaintiff agrees, promises, represents, and warrants never again to pursue the claims released in this Agreement, whether through the filing of administrative charges, lawsuits, or otherwise, unless otherwise explicitly permitted by this Agreement or applicable law.

**(8)    FURTHER ASSURANCE.** Plaintiff and her counsel shall execute and file such other documents and take such further action as may be necessary to carry out the intent of this Agreement, without the need for any further consideration.

**(9)    NO OTHER SUITS OR CLAIMS.** Plaintiff affirms that, other than the Lawsuit, she has not asserted any claims, internal or external complaints, civil actions, or charges against the Company or any Releasee including, but not limited to, for sexual harassment or sexual abuse by the Company or any Releasee against Plaintiff or any other individual, and she is not aware of any facts supporting such a claim. Plaintiff represents that she will not institute any other actions or lawsuits against the Company or any of the Releasees based upon events occurring up to and including the Effective Date of this Agreement.

**(10)    MEDICAL BILLS, LIENS, AND OTHER POTENTIAL RIGHTS FOR REIMBURSEMENT.**

(a)    <u>Responsibility for Satisfaction of All Liens</u>. Plaintiff represents and warrants that all bills, costs, or liens resulting from or arising out of any

8

Plaintiff's Initials ___

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

alleged injuries sustained as a result of the allegations giving rise to the Lawsuit, or actions or inactions by the Company or any of the Releasees are her responsibility to pay. Plaintiff represents that she was not enrolled in the Medicare program at the time she worked with the Company or anytime thereafter through the Effective Date of this Agreement, and has not received Medicare benefits for medical services or items related to, arising from, or in connection with any accident, occurrence, injury, illness, disease, loss, claim, demand, or damages that are subject to this Agreement and the releases herein (the "Released Matters"). Plaintiff represents and warrants that no Medicaid payments have been made to her or on her behalf and that no liens exist or have been asserted arising from or related to any Released Matters. Plaintiff agrees to assume responsibility for satisfaction of any and all rights to payment, claims, or liens of any kind that arise from or are related to payments made or services provided to her, or on her behalf, and expenses, costs, or fees incurred in connection with the claims asserted by her related to any alleged injuries, including, without limitation, all subrogation claims, liens, or other rights to payment relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer, or other entity.

(b)    <u>Attorney Liens</u>. Plaintiff represents and warrants that, except as explicitly set forth in this Agreement, all legal expenses, bills, costs, or contingency fee agreements resulting from or arising out of representation of Plaintiff by any attorney in relation to the Lawsuit or her previous employment with the Company are her responsibility to pay, and any liens based on legal expenses, bills, costs or contingency fee agreements incurred as a result thereof will be satisfied solely by Plaintiff. Plaintiff will indemnify, defend, and hold harmless the Company and the Releasees from any and all such claims.

(c)    <u>No Additional Recovery</u>. It is the intent of this Agreement that Plaintiff, her lienholders, and any other individual or entity with an interest in her claims shall not recover, directly or indirectly, any sums from the Company or the Releasees. To the extent that Plaintiff's representations and warranties related to her Medicare status and receipt of medical services and items related to the Released Matters are inaccurate, not current, or misleading, Plaintiff agrees to indemnify and hold harmless the Company and Releasees from any and all claims, demands, liens, subrogated interests, and causes of action of any nature or character that have been or may in the future be asserted by Medicare and/or persons or entities acting on behalf of

9

Plaintiff's Initials ___

Medicare, or any other person or entity, arising from or related to this Agreement, the Settlement Payment, any payments made under the Medicare Secondary Payer statute, 42 U.S.C. Section 1395y(b) ("Conditional Payments"), or any medical expenses or payments arising from or related to any Released Matters that are subject to this Agreement or the releases set forth herein, including but not limited to: (a) all claims and demands for reimbursement of Conditional Payments; (b) all claims and demands for penalties based upon any failure to report, late reporting, or other noncompliance with or violation of Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, which in part amended the Medicare Secondary Payer statute; that is based in whole or in part upon late, inaccurate, or inadequate information provided to the Company and Releasees by Plaintiff or her agents or upon any failure of Plaintiff or her agents to provide information; and (c) all Medicaid liens. This indemnification obligation includes all damage, double damages, fines, penalties, attorneys' fees, costs, interest, expenses, and judgments incurred by or on behalf of the Company or Releasees in connection with such claims, demands, subrogated interests, or causes of action. Regardless of the accuracy of the representations and warranties made above, Plaintiff agrees to indemnify and hold harmless the Company and Releasees for taxes on the payments made to Plaintiff and any tax consequences related thereto, except those prohibited by law.

**(11)** <u>**CONSULT WITH AN ATTORNEY**</u>. Plaintiff acknowledges that she was advised to consult with an attorney and/or tax advisor of her choice, at her expense, and she did consult with an attorney of her choice before signing this Agreement.

**(12)** <u>**ENTIRE AGREEMENT**</u>. This Agreement sets forth the entire agreement of the Parties, and it fully supersedes any and all prior agreements, arrangements, and understandings between and among them, with the exception of all provisions contained in Section 2, 3, 4, 7, and 8 of Plaintiff's "Confidential Information and Intellectual Property Agreement" with the Company dated March 29, 2021, which shall remain in full force and effect. No other oral understandings, statements, promises, terms, conditions, obligations, or agreements contrary to or in addition to the terms of this Agreement exist. This Agreement may not be changed by oral representations, and may only be amended by written instrument executed by a duly authorized representative of each Party. In making this Agreement, the Parties have not relied upon any statements, agreements, promises,

Plaintiff's Initials ___

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

arrangements, or oral understandings concerning this matter other than those expressly set forth in this Agreement.

**(13) <u>NO ADMISSIONS.</u>** Plaintiff acknowledges that the Company denies that it has acted wrongfully towards Plaintiff, and denies that it violated any federal, state, or local statute, ordinance, rule, regulation, or common law. The Parties have entered into this Agreement solely to avoid the substantial costs, inconvenience, and uncertainties of further litigation of a doubtful and disputed claim. The Parties agree that neither the execution of this Agreement nor the performance of its terms and conditions shall be construed or considered by any Party or by any other person as an admission of liability or wrongdoing by Plaintiff, the Company, or any Releasee.

**(14) <u>ACKNOWLEDGEMENTS.</u>** Plaintiff acknowledges that she has read this Agreement and understands all of its provisions; and Plaintiff voluntarily enters into this Agreement, which is contractual in nature and contains a general release of claims.

**(15) <u>NO WAIVER.</u>** The waiver by any Party of a breach of any provision of this Agreement by the other Party shall not operate as or be construed to be a waiver of any subsequent breach of such provision or of any breach of any other provision of this Agreement. The failure of a Party to insist upon strict adherence to any term of this Agreement on one or more occasions shall not be considered a waiver or deprive that Party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

**(16) <u>COUNTERPARTS.</u>** This Agreement may be executed in one or more counterparts, each of which will be considered an original instrument and all of which together will be considered one and the same Agreement.

**(17) <u>VOLUNTARY WAIVER OF RIGHTS.</u>** Plaintiff acknowledges that she signed this Agreement knowingly and voluntarily, that she did not experience any duress or coercion, that she read and understands this Agreement in its entirety, and that she has not been forced to sign this Agreement by anyone.

**(18) <u>ASSIGNMENT.</u>** This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns, and any such successors and assigns shall be considered third-party beneficiaries of this Agreement. Notwithstanding the contents of this Section, Plaintiff has no right to assign this Agreement.

11

Plaintiff's Initials

**(19)  APPLICABLE LAW; VENUE; JURISDICTION.**

(a)            This Agreement is made and entered into in the State of Florida and shall be interpreted, enforced, and governed under the laws of Florida, without giving effect to the principles of conflicts of law.

(b)            Venue for any dispute related to this Agreement will be before a court of competent jurisdiction in the United States District Court for the Middle District of Florida or in the appropriate state court in Lee County, Florida. Plaintiff irrevocably waives her right to object to or challenge the above selected forum on the basis of inconvenience or unfairness under 28 U.S.C. § 1404, or under similar state or federal law.

(c)   Plaintiff consents to the exclusive jurisdiction of any state or federal court of competent jurisdiction located within Lee County, Florida, and Plaintiff irrevocably agrees that all actions or proceedings relating to this Agreement may be litigated in such courts.

**(20)  CONSTRUCTION.** This Agreement is deemed to have been drafted jointly by the Parties. The Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against either Party. No ambiguity or uncertainty in this Agreement shall be interpreted in favor of or against any Party.

**(21)  ATTORNEY'S FEES.** In the event that Plaintiff brings an action against the Company or any Releasee based on any claim released under this Agreement, the Company or Releasee may, at its option, and as applicable: (i) plead this Agreement in bar to any such action; (ii) assert any monies paid as a set off to alleged damages in any such action; and (iii) seek any and all remedies available including, but not limited to, injunctive relief and monetary damages, costs, and reasonable attorneys' fees. This Section does not apply to any claim which cannot be released, or for which Plaintiff can still bring a lawsuit, as noted explicitly in this Agreement. In the event of any litigation or other enforcement action pertaining in any way to this Agreement, the prevailing party shall be entitled to the payment of its attorney's fees and court costs incurred at all trial and appellate levels of the litigation or other proceeding, or any enforcement action by the prevailing party including, but not limited to, attorney's fees and costs expended or otherwise incurred in connection with litigating "fees for fees" in proceedings to enforce this provision of the Agreement.

12

Plaintiff's Initials ___

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

**(22)**  **JURY TRIAL WAIVER.** The Parties hereby waive a trial by jury as to any and all claims or causes of action that they may have against each other.

**(23)**  **TIME FOR EXECUTION AND REVOCATION.**

(a)          Plaintiff acknowledges that she was provided twenty-one (21) calendar days after receipt of this Agreement to consider its terms before signing it. Plaintiff may sign the Agreement before the expiration of the twenty-one (21) day period. Plaintiff acknowledges that she has seven (7) calendar days after signing this Agreement (the "Revocation Period") within which to revoke her execution of this Agreement. To effectively revoke her execution of this Agreement, Plaintiff's signed written notice of revocation must be actually received prior to the expiration of the Revocation Period, and must be delivered to Cathy J. Beveridge at BUCHANAN, INGERSOLL & ROONEY, PC, 401 E. Jackson Street, Suite 2400, Tampa, Florida 33602; email: Cathy.Beveridge@bipc.com.

(b)          Should Plaintiff timely and properly revoke her execution of this Agreement as specified in this Section, this Agreement will be null, void and of no force or effect, and it will not bind or obligate either Plaintiff or the Company.

(c)          The Settlement Payment will not be dispersed until the Revocation Period has expired without Plaintiff's revocation and all other conditions precedent have occurred. In calculating the time periods specified in this Section, if the last day of any period falls on a Saturday, Sunday, or federal holiday, then the period shall be extended to the first following day which is not a Saturday, Sunday, or federal holiday. TIME IS OF THE ESSENCE IN RELATION TO THIS SECTION.

**(24)**  **TRANSLATION.**   Plaintiff represents, and her counsel hereby certifies, that prior to Plaintiff signing this Agreement, it has been translated into Spanish, Plaintiff's native language. Plaintiff, having had the terms of the Agreement presented to her in Spanish, agrees with these terms and is voluntarily signing the Agreement.

**(25)**  **TRANSLATION VERIFICATION.**

This fourteen (14) page document was read to me in Spanish. I hereby certify that I understand the contents of this Agreement to the best of my knowledge, ability, and belief.

13

Plaintiff's Initials ⟨initials⟩

Verificación de traducción: este documento de catorce (14) páginas me ha sido leído en español.  Por medio del presente certifico que entiendo. El contenido de este acuerdo a mi mejor saber, entender y creencias.

Dated: ___06 / 10 / 2022___, 2022

_____
Plaintiff, Irma Y. Ortega

Dated: __06/10/2022_____, 2022

_____
Defendant, Nutraluxe Global LLC
By: Chaz Hatfield
Its:        President

4884-5521-9491, v. 1

14

Plaintiff's Initials___

Doc ID: 43f17a30b75345fc65319640999dc8758d5b0259

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Settlement Document |
| **FILE NAME** | Ortega Settlement...t and Release.pdf |
| **DOCUMENT ID** | 43f17a30b75345fc65319640999dc8758d5b0259 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

## Document History

| | | |
|---|---|---|
| SENT | **06 / 09 / 2022**<br>13:13:58 UTC-4 | Sent for signature to Irma Ortega (ortegairma382@gmail.com)<br>from svelez@thepalmalawgroup.com<br>IP: 75.74.89.99 |
| VIEWED | **06 / 10 / 2022**<br>11:04:40 UTC-4 | Viewed by Irma Ortega (ortegairma382@gmail.com)<br>IP: 172.58.128.210 |
| SIGNED | **06 / 10 / 2022**<br>11:45:21 UTC-4 | Signed by Irma Ortega (ortegairma382@gmail.com)<br>IP: 172.58.128.52 |
| COMPLETED | **06 / 10 / 2022**<br>11:45:21 UTC-4 | The document has been completed. |

Powered by ▼ **HELLOSIGN**